# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

HERBERT S. HOFFMAN, ET AL.          )
                                    )
            PLAINTIFFS              )
                                    )
v.                                  )          CIVIL NO. 08-279-P-H
                                    )
SECRETARY OF STATE                  )
OF MAINE, ET AL.,                   )
                                    )
            DEFENDANTS              )

## DECISION AND ORDER ON PLAINTIFFS' EMERGENCY MOTION FOR

## PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

This is an emergency decision in an election law case. The plaintiffs filed the case on Tuesday, August 26, 2008, after the close of business, seeking emergency relief to place their candidate's name on the ballot. I held oral argument Thursday afternoon, August 28. The Secretary of State requires a decision by today, Friday, August 29, because of the need to print ballots and mail them overseas for timely absentee balloting in the November general election.

The plaintiffs are a would-be independent candidate for the United States Senate in the November election and thirteen of his petition signers, registered Maine voters. They have brought this federal lawsuit against the Secretary of State of Maine challenging how Maine election laws have been applied to their petitions. They assert that after the candidate gathered more than the 4,000 signatures necessary to secure a listing on the ballot and after a challenge to

1

the petitions was leveled by another voter, the applicable rules for petition-gathering were changed. As a result, 183 signatures were voided, the candidate ended up without the necessary 4,000 qualifying signatures, and his name will not appear on the November ballot. They claim that this change in the petition-gathering rules after it was too late to comply with the new rules violated the due process guarantee of the Fourteenth Amendment to the United States Constitution, implicating their First Amendment rights.

Because of the administrative constraints in printing and mailing the ballots for absentee voting, especially overseas, the plaintiffs filed an emergency motion that I enter a preliminary injunction and temporary restraining order today, directing the Secretary of State to include the candidate's name on the ballot now, pending any ultimate decision on the merits of their lawsuit. To delay, they say, would make effective relief impossible if they ultimately win their lawsuit because it will then be too late to add his name. I **DENY** their emergency motion because I find that they have not shown a likelihood of success on the merits of their claims. In the candidate's case, that conclusion is easy: he has recently been a party to a lawsuit in the Maine state courts over whether his petitions make him eligible to be listed on the November ballot; he should have presented all his arguments about his ballot listing in that lawsuit, and he is not permitted to resurrect the dispute here (a principle known as "issue preclusion" if the arguments actually were raised and decided, or "claim preclusion" if the second lawsuit raises the very same claim—here this candidate's right to be on the ballot—regardless of whether the issues

2

raised in the second lawsuit are the same as those addressed in the first). In the case of the petition signers/voters, I conclude that they are not bound by that earlier case because they were not parties to it, but that they do not have a likelihood of success on the merits of their constitutional claims here. In particular, they have not shown that in signing the petitions for this candidate they relied in any meaningful way on the previous manner in which the rules were applied. They therefore fail to show that applying the new rule to their signatures works a fundamental unfairness in the election process.

## I.  Facts and Procedural History

The plaintiff Herbert J. Hoffman ("Hoffman") is a prospective candidate for the office of United States Senator. Pls.' Compl. ¶ 1 (Docket No. 1). For his name to be included on the November 2008 ballot, Hoffman was required to present at least 4,000 valid signatures of registered voters to Secretary of State Matthew Dunlap ("the Secretary" or "Dunlap") collected on appropriately circulated nomination petitions. 21-A M.R.S.A. § 354(5)(C). After collecting the required signatures, Hoffman and forty to forty-five of his supporters swore oaths as petition circulators. Knutson v. Dep't of Sec'y of State, No. KEN-08-375, 2008 WL 2878318, at *1 (Me. July 28, 2008). As circulators, each swore "that all of the signatures to the petition[s] were made in the circulator's presence and that to the best of the circulator's knowledge and belief each signature [was] the signature of the person whose name it purports to be." 21-A M.R.S.A. § 354(7)(A). Hoffman received assistance from his daughter and

another individual when gathering signatures on at least three petitions for which Hoffman was the circulator.  Id.

Hoffman presented 4,112 signatures to the Secretary within the required statutory time.  Id. at *1-2.  As the statute allows, a registered voter, John Knutson ("Knutson"), filed a challenge with the Secretary concerning many of Hoffman's collected signatures.[1]  Id. at *1.  In a hearing before Deputy Secretary of State Julie Flynn ("Flynn"), Knutson requested that certain signatures and whole petition sheets be voided for failure to meet statutory requirements.  Id.  Ultimately, Flynn recommended that the Secretary invalidate seventy-four signatures, including three signatures on petitions that Hoffman personally signed as circulator.  In re Challenge by John Knutson Against Petitions of Herbert J. Hoffman, Report of the Hearing Officer (June 19, 2008) (Ex. B to Pls.' Compl. (Docket No. 1-3)).  Flynn found that these three signatures were not executed in Hoffman's "presence" as she interpreted that statutory term in title 21-A, section 354(7)(A) of the Maine Revised Statutes.  Id.  As construed by Flynn, "presence" under Section 354(7)(A) requires both "physical proximity" and "awareness" on the part of the circulator and oath-taker, such that the circulator is not "too far away to see the voters sign their names."  Id.  The three signatures in question were invalid because they "were not collected within Hoffman's personal and visual oversight."  Knutson, 2008 WL 2878318, at *1.  However, Flynn rejected Knutson's argument that the

---

[1] According to the complaint, Mr. Knutson is the chairman of the Maine Democratic Party. Pls.' Compl. ¶ 22.  The applicable statute, however, allows a challenge to be raised by any "registered voter residing in the electoral division of the candidate concerned."  21-A M.R.S.A. § 356(2)(A).  Mr. Knutson's position as chairman is therefore irrelevant to my analysis.

4

petition sheets with the offending signatures "should be entirely voided because they contained invalid signatures."  Id.

The Secretary adopted Flynn's report, observing that Flynn's recommendations were "consistent with the manner in which the Secretary of State has interpreted and applied the relevant statutory provisions regarding nomination by petition and the collection and witnessing of signatures by circulators of petitions, and the validation of those signatures in other contexts."  Knutson v. Hoffman, Sec'y of State's Decision on Report of the Hearing Officer (June 23, 2008) (Ex. D to Compl. (Docket No. 1-5)).  The Secretary affirmed Flynn's conclusion that Hoffman had presented 4,038 valid signatures and thereby satisfied the statutory requirement for nomination to the U.S. Senate.  Knutson, 2008 WL 2878318, at *2.

On July 1, 2008, Knutson appealed the Secretary's decision to the Maine Superior Court, arguing that Hoffman's oath as circulator failed to meet the statutory requirements on each petition sheet because he had sworn improperly that each of the signatures on that sheet had been made in his presence.  Superior Court Docket, Kennebec County, Knutson v. Sec'y of State (No. AP-08-49).  On July 2, Hoffman intervened in the Superior Court proceeding.  Id.  Each of the three signatures in question was on a different sheet, and thereby implicated a total of 109 otherwise valid signatures. Knutson, 2008 WL 2878318, at *2 & n.4.  Knutson argued that all these signatures must be voided because the oath on each of the three sheets was faulty.  Id. at *2.  The Superior Court rejected Knutson's argument and upheld

the Secretary's decision.  Id. Next, Knutson appealed to the Maine Supreme Judicial Court, sitting as the Law Court.

The Law Court held that it would defer to the Secretary's interpretation of the statutory requirement of "presence"—that it requires both physical proximity and awareness—because the term "presence" in Section 354(7)(A) is ambiguous.  Id. at *2-3.  But the Court disagreed with the Secretary's conclusion that the consequence was to invalidate only the three signatures in question.  Id. at *4.  Instead, it agreed with Knutson and held that each sheet on which such a signature appeared must be voided in its entirety because the oath was faulty.  Id.

The Court recognized that the Secretary had previously decided in earlier cases that only individual signatures were voided in such circumstances and cited the Secretary's 2004 decision to that effect in In re Challenge by Robert N. Bailey Against Petition of John L. Tuttle, Jr., Ruling of the Sec'y of State (Apr. 5, 2004) (Ex. C to Compl. (Docket No. 1-4)). Knutson, 2008 WL 2878318, at *4. But unlike the term "presence," which the Court found ambiguous, here the statute said that "[a] nomination petition which does not meet the requirements of this section is void," 21-A M.R.S.A. § 354(9), and that language, according to the Court, was unambiguous, Knutson, 2008 WL 2878318, at *4.   Thus, it refused to defer to the Secretary's previous interpretation of the election law on this point.  Id.  The result for Hoffman was that instead of three voided signatures, 109 additional signatures were voided, and Hoffman's total fell to 3,929 valid signatures.  Id. at *2 & n.4. The case was

remanded to the Superior Court to vacate the Secretary's approval of Hoffman's candidacy.  Id. at *6. It appears to be undisputed that this is the first time that the requirement has been applied in this fashion.

Next, Hoffman requested the Law Court to stay its mandate and filed a simultaneous motion for stay with the United States Supreme Court pending the filing of a petition for a writ of certiorari.  Knutson v. Dep't of Sec'y of State, No. KEN-08-375, 2008 WL 3855025, ¶ 2 (Me. Aug. 20, 2008).  On August 20, 2008, the Law Court by a divided vote granted in part Hoffman's motion to stay its mandate, ordering a temporary stay while Hoffman sought a U.S. Supreme Court stay and prepared an expedited petition for certiorari, and ordering that its mandate would issue on August 27, 2008 (this past Wednesday), with no further stay permitted.  Id. ¶¶ 14-15.  Also on August 20, 2008, United States Supreme Court Justice Souter denied without explanation Hoffman's application for stay in the U.S. Supreme Court.  Letter from William K. Suter, Clerk of the U.S. Supreme Court (Aug. 20, 2008) (Ex. L to Compl. (Docket No. 1-14)).  At oral argument before me on August 28, Hoffman's lawyer said that he had decided not to seek certiorari in the Supreme Court.

On August 26, 2008, Hoffman and thirteen registered voters who signed Hoffman's nomination petitions[2] but who were not parties to the prior state court proceedings, filed in this court a complaint for declaratory and injunctive

---

[2] Plaintiffs Kelli A. Heffley, Gary Higginbottom, Jon Queally, and Howard Shaw are among those whose signatures are listed on one of the three wholly voided petitions. Pls.' Compl. ¶¶ 7-9, 13.  Plaintiffs David L. Bright, Jean Hay Bright, Bruce Gagnon, Eugene A. Glick, Susan H. Glick, Jane Sanford, Mark P. Senior, Patricia O'Day-Senior, and Gene Sullivan signed nomination petitions other than the three at issue in this case.  Id. ¶¶ 2-6, 10-12, 14.

7

relief and moved for an emergency preliminary injunction and temporary restraining order. Pls.' Compl.; Emergency Mot. For Prelim. Inj. (Docket No. 3). The plaintiffs make constitutional claims against Dunlap and Flynn in their official capacities, and the Maine Department of Secretary of State, under 42 U.S.C. § 1983 (2000). Pls.' Compl. ¶¶ 15-17. Specifically, the plaintiffs assert four claims: (i) applying Flynn's definition of "presence" to their petitions, a definition upheld by the Secretary and the Law Court, violates substantive due process, id. ¶ 53, (ii) applying to their petitions the Law Court's new interpretation that entire petition sheets must be voided if the oath inaccurately certifies "presence" as to even one signature violates substantive due process, id. ¶ 74, (iii) Section 354(7)(A)'s oath requirement is vague and ambiguous, violating the First Amendment, id. ¶ 74, and (iv) Section 354(9) as interpreted by the Maine Law Court to require voiding of entire petitions is an unconstitutional infringement of First Amendment fundamental rights, id. ¶ 83. The defendants opposed the motion orally on August 28. Knutson moved to intervene and all the parties consented to his intervention at least as to the emergency motion request. Knutson opposed the emergency motion orally and in writing.

## II. Analysis

A preliminary observation is critical. I accept fully the Maine Law Court's determination of what Maine election laws mean. The Maine Law Court is the final authority on interpreting Maine law. O'Brien v. Skinner, 414 U.S. 524, 531 (1974) ("[I]t is not our function to construe a state statute contrary to the

construction given it by the highest court of a State."). As a result, in this dispute, I am concerned only with federal questions, specifically, the plaintiffs' assertions that leaving Hoffman off the ballot is so fundamentally unfair as to deny them substantive due process of law, as guaranteed by the Fourteenth Amendment, and their claims concerning their First Amendment rights of political expression, association, petition for redress of grievances, and voting.

### A. *The Standard*

To obtain emergency relief of the sort the plaintiffs seek here, they must show "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

I analyze separately the claims of candidate Hoffman and those of the petition signers. I find it necessary to address only the likelihood of success which, according to the First Circuit, is "[t]he sine qua non of this four-part inquiry." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

### B. *Hoffman*

The focus of the state lawsuit was whether Hoffman's name would be on the November ballot. Knutson, 2008 WL 2878318. Knutson had challenged the validity of Hoffman's petitions, and Hoffman intervened in the dispute to defend his right to be on the ballot. Id. Those were the claims at stake: Knutson's

claim that Hoffman's name should be off the ballot and Hoffman's claim that his name should be on the ballot. Id. Accordingly, Hoffman had a clear incentive to raise in that lawsuit every argument he had that would support keeping his name on the ballot. In fact he did raise some of the constitutional arguments, although perhaps in retrospect he wishes he had emphasized them more. See id. at *5. In any event, the Law Court referred to some of the constitutional arguments in passing in its decision noting that "[l]ong-standing jurisprudence in Maine, however, confirms that voiding petitions that fail to comply with the statute falls well within acceptable constitutional parameters. We do not address the constitutional concern further."[3]   Id. (internal citations omitted).

The plaintiffs argued orally and in writing that claim and issue preclusion principles do not apply in full force to claims under 42 U.S.C. § 1983. They are incorrect. The United States Supreme Court has made clear that § 1983 is not treated any differently for these purposes, Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 85 (1984), and the First Circuit agrees, Griffin v. Burns, 570 F.2d 1065, 1070 (1st Cir. 1978). Under principles of claim preclusion, the earlier state lawsuit about his ballot access forecloses Hoffman from raising now in this new federal lawsuit about his ballot access any arguments that he could have made in the earlier lawsuit. See Migra, 465 U.S. at 84-85. That covers all four counts of the current complaint.

---

[3] To the extent the issues were raised and decided in the earlier lawsuit, the doctrine of issue preclusion prevents their being resurrected here. See generally 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4416 et seq. (2d ed. 2002).

Hoffman seems to argue that he could not reasonably be expected to raise his due process argument (that it is fundamentally unfair to apply to him what he claims are new election rule interpretations) until the Law Court came up with the new interpretations, but that is not so. That was merely one more argument that Hoffman should have made to the Law Court as to why it should not take his name off the ballot.  I appreciate his consternation over losing even though the Attorney General, the Secretary of State, and a Superior Court Justice all agreed with his position, but that is the hazard of any lawsuit and should have created the incentive to raise all his constitutional arguments there.   Thus, the earlier lawsuit precludes Hoffman from making his ballot claims here. He therefore cannot show a likelihood of success on the merits of his claims in this federal lawsuit that would justify awarding him emergency relief.[4]

### C.  *The Petition Signers/Voters*

Claim preclusion generally applies only to those who were actually parties to the earlier litigation. Taylor v. Sturgell, 128 S.Ct. 2161, 2166-67 (2008).[5] In the earlier litigation, Knutson challenged the petitions, and Hoffman intervened in the resulting state court lawsuit. Knutson, 2008 WL 2878318. Nothing suggests that the petition signers had any involvement in that dispute

---

[4] His claim probably is also precluded by the so-called Rooker-Feldman doctrine eliminating federal court jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

[5] For purposes of claim preclusion, "[t]he reach of a prior state court judgment is determined by state law."  N.H. Motor Transp. Assoc. v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995). The parties have not argued that Maine state law on preclusion differs from federal law.

or that Knutson tried to join them in the dispute that he had created. Preclusion of claims is an affirmative defense as to which the defendants bear the burden of proof. Fed. R. Civ. P. 8(c). The United States Supreme Court recently stopped a lower court trend that had begun to broaden the scope of this preclusion in applying it to others through a category of "virtual representation." The Court recognized only six exceptions to the rule that claim preclusion is limited to actual parties. Taylor, 128 S.Ct. at 2172-73. The defendants have given me no record here from which I can conclude that the petition signers/voters fit any of the six exceptions.

Instead, the First Circuit cases tend clearly in the reverse direction, holding that petition signers and voters have interests that are distinct from those of candidates, so that they are not bound by a lawsuit outcome adverse to the candidate if they were not actually parties to that lawsuit. See, e.g., Griffin, 570 F.2d at 1072. Political campaigns can be "as much a means of disseminating ideas as a means of attaining political objectives." Perez-Guzman v. Gracia, 346 F.3d 229, 239 (1st Cir. 2003) (finding insufficient commonality of interest between political party and member to apply preclusion principles); Griffin, 570 F.2d at 1072 ("A person's interest in participating in the political process through voting and having his vote counted is a right both 'individual and personal in nature.' The value of meaningful participation extends beyond that of the interest of the candidate of one's choice in a victorious election. . . . While [the candidate's] personal interests were and presently are parallel with the voters', they are not

12

necessarily identical—some voters voted for other candidates. We are unable to say that [his] candidate status, and his attempted assertion of the . . . voters' claims, were enough to make him their actual personal representative whose action or non-action in the state proceeding would legally bind them."). The fact that the petition signers/voters are represented by the same lawyer in this lawsuit is not, alone, enough to change the conclusion that the petition signers' and voters' interests are distinct from the candidate. Perez-Guzman, 346 F.3d at 234. I conclude that their claims are not foreclosed by the earlier lawsuit.[6]

I therefore deal with the four claims substantively for likelihood of success on the merits. First, I recognize:

> It is by now well established that the concept of 'liberty' protected against state impairment by the Due Process Clause of the Fourteenth Amendment includes the freedoms of speech and association and the right to petition for redress of grievances. These rights may take the form of creating political 'parties,' or of simple association for mutual political or social benefits, *including support of independent candidates . . . . Access to official election ballots represents an integral element in effective exercise and implementation of these activities.*

Briscoe v. Kusper, 435 F.2d 1046, 1053 (7th Cir. 1970) (emphasis added; citations omitted). Clearly, then, these petition signers' First and Fourteenth Amendment rights are at stake here.

Nevertheless, the plaintiffs' argument in Count III—that the oath requirement under Maine election law is so vague and ambiguous as to violate the First Amendment—deserves short shrift. If there was any ambiguity to the

---

[6] The Rooker-Feldman doctrine does not help the defendants here because it is limited to cases involving the losing party in state court. Federación de Maestros de. P.R., v. Junta de Relaciones del Travajo de P.R., 410 F.3d 17, 23-24 (1st Cir. 2005); States Res. Corp. v. The Architectural Team, Inc., 433 F.3d 73, 79 (1st Cir. 2005).

requirement, the Law Court has eliminated it in its authoritative interpretation of what the law means.  See Knutson, 2008 WL 2878318, at *4. If there is some unfairness in applying that interpretation to the Hoffman petitions, I consider that assertion under Count II below, where the petition signers challenge the "retroactive" application of the interpretation to them.

The argument in Count IV—that the state statute concerning a petition being void, as interpreted by the Law Court, unconstitutionally infringes First Amendment rights because it imposes a severe burden and draconian sanctions—is unavailing. It is true that voters have "constitutionally protected interests in free association and electoral participation," Perez-Guzman, 346 F.3d at 235 (quoting Cruz v. Melecio, 204 F.3d 14, 22 (1st Cir. 2000)), and that I am to apply "exacting scrutiny to severe restrictions on ballot access," Perez-Guzman, 346 F.3d at 239. But "[a]lthough these interests are important, they are not absolute. Fair, honest, and orderly elections do not just happen. Substantial state regulation is a prophylactic that keeps the democratic process from disintegrating into chaos. Consequently, there is a strong state interest in regulating all phases of the electoral process, including ballot access." Perez-Guzman, 346 F.3d at 238.

As the Supreme Court has stated:

> It is beyond cavil that "voting is of the most fundamental significance under our constitutional structure." It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute. The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own

> elections. Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."

Burdick v. Takushi, 504 U.S. 428, 433 (1992) (case citations omitted).

I conclude that requiring an oath as to the contents of a petition sheet and creating a penalty of voiding the sheet if the oath is faulty lies well within those state powers. These are not "severe" restrictions.

The only plausible argument that the petition signers/voters have is their substantive due process argument under the Fourteenth Amendment in Counts I and II—that the nomination and petition-gathering process was constitutionally unfair for this election alone, because the rules were changed on them after their petitions were signed and the deadlines passed. The record does not support that argument as to the Law Court's definition of the "presence" requirement (Count I). The Law Court did not create that definition; the hearing officer and the Secretary of State did, and the Secretary said that the definition was "consistent with the manner in which the Secretary of State has interpreted and applied the relevant statutory provisions." Knutson, Sec'y of State's Decision on Report of the Hearing Officer. The only evidence in the record of any change in the definition of the "presence" requirement is comments attributed to the Secretary after the decision in a news article. Matt Wickenheiser, Ruling on Petitions Likely Sign of Big Changes, Portland Press Herald, Aug. 5, 2008 (Ex. G. to Pls.' Compl. (Docket No. 1-9)). It is doubtful that those comments qualify as evidence given their hearsay nature; in any

event, the comments are too vague to support a conclusion that the Secretary had earlier applied a different definition to the term "presence." I conclude that the petition signers are unlikely to be able to prove any change in how the term "presence" has been applied.

The Law Court's interpretation of the statutory requirement as to what happens when a circulator swears to a signature that did not satisfy the "presence" standard—to require that the entire sheet of signatures be treated as void if the circulator's oath is found to be improper as to even one signature—is a different matter (Count II). That was a brand new interpretation. See Knutson, 2008 WL 2878318, at *4. The Secretary had previously ruled in 2004 that the rule was to the contrary, that only the problematic signature(s) would be voided. In re Challenge by Robert N. Bailey, Ruling of the Sec'y of State. In doing so, the Secretary, through the hearing officer, declared that such had been the office's consistent interpretation, and cited cases from 2000 and 2002 as evidence. Id. The Law Court itself cited the Secretary's 2004 decision, but declined to follow it because the Court concluded that the plain language of the statute made the Secretary wrong. Knutson, 2008 WL 2878318, at *4. So from at least 2000 until 2008, the more lenient rule applied. Then, after the Hoffman signatures were gathered and the deadline had passed, the Law Court at Knutson's urging decided that the statute requires application of the stricter rule. Id. Without question, that is the rule going forward. The issue is whether it creates any substantive due

process violation concerning these petition signers' First Amendment rights to apply that new interpretation to them in this election.

There are three significant cases that lend some credence to the petition signers/voters' arguments that it is procedurally unfair to apply a new interpretation to their petitions and their signatures.[7]

In <u>Griffin</u>, the Rhode Island Secretary of State had prepared absentee ballots for state primary elections for the Providence City Council. 570 F.2d at 1067. The Secretary advertised that absentee or shut-in balloting was available, and sent the appropriate ballots to those whom the Board of Canvassers screened as qualified. <u>Id</u>. The State Board of Elections then received the returned ballots and, if they were valid, forwarded them to the Board of Canvassers for tabulation and that Board counted them in the election results. <u>Id</u>. After the election, in a legal challenge brought by a defeated candidate, the Rhode Island Supreme Court held for the first time that there was no statutory authority for allowing absentee and shut-in voters to vote by absentee ballot.  <u>Id</u>. at 1068. As a result, a different candidate was certified as the election winner.  <u>Id</u>. In the later federal lawsuit by the previous winner, some of the absentee ballot users testified that had they known in advance they could not vote in that fashion, they would have managed to vote at the polls in person on Election Day. <u>Id</u>. at 1069. The First Circuit found a substantive due process violation in failing to count the absentee ballots for

_____

[7] I recognize that these cases deal with when a federal court should intervene in a state or local election, whereas here I am dealing with a national election. Nevertheless, the principles of substantive due process upon which the plaintiffs rely for their claims seem to apply equally, and no party has argued to the contrary.

this particular election and held that "[w]hen a group of voters are handed ballots by election officials that, unsuspected by all, are invalid, state law may forbid counting the ballots, but *the election itself becomes a flawed process*." Id. at 1076 (emphasis added).

Briscoe involved an aldermanic election in Chicago. 435 F.2d at 1048. The Chicago Board of Election Commissioners invalidated certain nomination papers for technical failings (duplicated signatures or a missing middle initial in the signatures). Id. at 1051-52. In a federal lawsuit brought by signatories and candidates, the federal court found that the Board in fact had changed its requirements but had not publicly announced the new requirements. Id. at 1055. The Seventh Circuit ruled that the Board could not deviate from its prior rules of decision "without announcing in advance its change in policy" where such important rights were at stake. As a result, it held that a substantive due process violation had occurred. Id.

Willliams v. Sclafani involved a New York City council election. 444 F. Supp. 906 (S.D.N.Y. 1978). To be listed on the primary ballot, a candidate had to acquire 1,500 signatures on "designating petitions." Id. at 909. New York had recently adopted a new voter registration statute permitting registration by mail. Id. A candidate who asked the City Board of Elections was told that a street registrant could simultaneously sign the mail registration application and a designating petition, so long as the registration was stamped in at the Board on or before the date that the Board received the designating petition. Id. Many of his petition signers followed the procedure of signing a mail-in

registration application at the same time they signed his petitions. Id. The candidate thereafter had his petitions approved by the Board. Id. His resulting candidacy was challenged in New York state court and the court ruled that under the statute a petition signer must actually be enrolled as a voter *at the time of signing* the designating petition. Id. at 909-10. As a result the candidate no longer had the necessary signatures. Id. The candidate filed a federal lawsuit, and the federal judge recognized that "[u]nlike *Briscoe*, . . . the change in procedure in this case apparently was an immediate consequence of judicial invalidation of an administrative practice, rather than a direct result of a change within the administrative agency itself." Id. at 912. (That is the precise situation here.)  But the court found that the agency was responsible for the result because it had given the incorrect advice and therefore that a due process violation occurred. Id. at 912-13.

The result in all three of these cases flows from the fact that the state authorities affirmatively had misled the candidates or voters or petition signers. As a result, the latter had relied on the announcements of the state authorities (Griffin), those authorities' previous practices (Briscoe), or the advice that they had provided (Sclafani) to their detriment in how they voted or prepared their petitions.  The First Circuit in later decisions likewise has read its Griffin precedent as requiring a showing that the voter or candidate in question relied upon the previously announced rule. See, e.g., Rossello-Gonzalez v. Calderón-Serra, 398 F.3d 1, 16 (1st Cir. 2005); Henry v. Connolly, 910 F.2d 1000, 1003 (1st Cir. 1990) (noting cases referring to "instances where the government, by

an established policy or course of conduct, actively misled interested parties"). Perhaps candidate Hoffman in circulating the petitions relied on the previous rule (I have no evidence to that effect), but he is foreclosed from pursuing his arguments in this court because he should have raised them in state court. Unlike Hoffman, it is difficult to see how the petition signers/voters could have independently relied on the earlier rule.[8]  How would their behavior in signing petitions have changed if they had learned of the new interpretation? I have no evidence before me on the subject. There is not even any evidence on this record that the petition signers knew of the previous interpretation that the Secretary had given the statute.

Thus, this is not like the <u>Griffin</u> case where the Rhode Island Secretary of State's office had prepared the absentee ballots, urged voters to use them, collected and counted them; and voters who could have gone to polls did not, but used the absentee ballots; and then after the election, the Rhode Island Supreme Court ruled that they could not be counted. 570 F.2d at 1057-68. Instead, there is no evidence in the record that these petition signers were actively misled by the Maine Secretary of State's office.  It is unfortunate that the Secretary's interpretation had to change without forewarning, but I do not

---

[8] The Complaint says that they "reasonably relied on all available past practices, policies and standards regarding the circulation of nominating petitions."  Pls.' Compl. ¶¶ 46, 55.  But the plaintiffs have furnished no information by affidavit or otherwise to support this blanket assertion.  At oral argument the petition signers' lawyer argued that their reliance is "derivative" of Hoffman's reliance. There is no evidence before me that this is so. Moreover, I have ruled that Hoffman has forfeited his right to pursue his reliance arguments by failing to raise them in the earlier state lawsuit. The plaintiffs have advanced no reason why, if their reliance derives from Hoffman's reliance and he has forfeited it, their "derivative" claims should not suffer the same fate.

see fundamental unfairness to these petition signers' exercise of their First Amendment rights in the Law Court's applying the new interpretation to the Hoffman petitions in deciding the case that was before it. I conclude, therefore, that it is unlikely that the petition signers/voters will be able to succeed on their substantive due process claims.

## Conclusion

It is unfortunate that a candidate with as much support as Hoffman has mustered cannot appear on the ballot because of missteps in the petition process, and it is always startling when a rule receives a new interpretation. But I conclude that candidate Hoffman had abundant opportunity to litigate these matters in the state court lawsuit and cannot resurrect them here.[9]  As for the petition signers/voters, they have not presented evidence that they relied to the detriment of their First Amendment rights on the previous interpretation of the election rules.  Therefore, I conclude that none of the plaintiffs can show a likelihood of success on the merits of their federal claims in this lawsuit. I **DENY** the emergency motion for preliminary injunction and temporary restraining order.

**SO ORDERED**
**DATED THIS 29TH DAY OF AUGUST, 2008**

**/S/ D. BROCK HORNBY**
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[9] At oral argument, Hoffman's lawyer stated that no one had challenged the validity of the nominating petitions of the two major-party Senate candidates, Tom Allen and Susan Collins. Thus, this is not a case in which Hoffman was treated differently than other candidates.

U.S. District Court
**District of Maine (Portland)**
**Civil Docket # 2:08-cv-00279-DBH**


**HERBERT J HOFFMAN, ET AL.,**          Represented by          **JOHN H. BRANSON**
**Plaintiff**                                                   LAW OFFICE OF JOHN H.
                                                               BRANSON, PA
                                                               183 MIDDLE STREET
                                                               4TH FLOOR
                                                               PO BOX 7526
                                                               PORTLAND, ME 04112-7526
                                                               (207) 780-8611
                                                               Email:
                                                               jbranson@bransonlawoffice.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*


**v.**


**Defendant**

**SECRETARY OF STATE, ME**          Represented by          **CHRISTOPHER C. TAUB**
*in his official capacity*                                  MAINE ATTORNEY GENERAL'S
                                                           OFFICE
**and**                                                    STATE HOUSE STATION 6
                                                           AUGUSTA, ME 04333
**DEPUTY SECRETARY OF**                                    207-626-8800
**STATE, ME**                                              Email:
*in her official capacity*                                 Christopher.C.Taub@maine.gov
                                                           *LEAD ATTORNEY*
**and**                                                    *ATTORNEY TO BE NOTICED*


**MAINE DEPARTMENT OF**                                    **PHYLLIS GARDINER**
**SECRETARY OF STATE**                                     MAINE ATTORNEY GENERAL'S
                                                           OFFICE
                                                           STATE HOUSE STATION 6
                                                           AUGUSTA, ME 04333
                                                           (207) 626-8830
                                                           Email: phyllis.gardiner@maine.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Intervenor**

| | | |
|---|---|---|
| **JOHN KNUTSON** | Represented by | **DANIEL W. WALKER**<br>PRETI, FLAHERTY, BELIVEAU,<br>PACHIOS & HALEY, LLP<br>PO BOX 1058<br>AUGUSTA, ME 04332-1058<br>207-623-5300<br>Email: dwalker@preti.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **MICHAEL KAPLAN**<br>PRETI, FLAHERTY, BELIVEAU,<br>PACHIOS & HALEY, LLP<br>PO BOX 9546<br>PORTLAND, ME 04112-9546<br>791-3000<br>Email: mkaplan@preti.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |